United States District Court
Southern District of Texas
**ENTERED**
July 02, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTHONY SIMON, <br> TDCJ #02286726 | § <br> § <br> § | |
| Plaintiff, | § <br> § | |
| v. | § | CIVIL ACTION NO. H-23-395 |
| BRYAN COLLIER, *et al.*, | § <br> § <br> § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

The plaintiff, Anthony Simon, is an inmate in the Texas Department of Criminal Justice – Correctional Institutions Division (TDCJ). He has filed a civil-rights complaint, accompanied by a memorandum in support, under 42 U.S.C. § 1983. (Docket Entry Nos. 1, 2). At the court's request, Simon has provided a more definite statement of his claims. (Docket Entry No. 8). Simon represents himself and has been granted leave to proceed without prepaying the filing fee.

Simon alleges that the defendants have violated his constitutional rights under the First, Fifth, and Fourteenth Amendments by denying him, a Muslim inmate, the right to eat halal foods. He asserts that Jewish inmates at the Wynne Unit are permitted to eat kosher meals. He further asserts that Jewish inmates are allowed a kosher spend at the commissary during Passover but that he is not allowed a similar spend at the commissary during Ramadan. He claims that the policy or custom of allowing kosher food and a Passover commissary spend but not allowing halal food and a Ramadan commissary spend violate his constitutional rights.

Simon sues: (1) Bryan Collier, TDCJ's Executive Director; (2) Joel Gauna, TDCJ Regional Director; (3) Rodger Bowers, Warden at the Wynne Unit; (4) Dustin T. Wonders, Assistant

Warden at the Wynne Unit; (5) Philip C. Amobi, unit chaplain at the Wynne Unit; and (6) Raqeeb Abdul Abbar, Muslim chaplain at the Wynne Unit.

Defendants Collier, Bowers, Wonders, and Amobi have moved to dismiss the complaint under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] (Docket Entry No. 14). Simon has filed a response (Docket Entry No. 16), the defendants have filed a reply (Docket Entry No. 17), and Simon has filed a reply (Docket Entry No. 18). Having reviewed the pleadings, all matters of record, and the applicable law, the court grants the motion to dismiss and dismisses this case. The reasons are explained below.

I.  **Background**

Simon practices the Sunni Muslim faith. He alleges that the failure to provide halal food at the Wynne Unit since 2022 violates his First Amendment free exercise rights.[2] (Docket Entry No. 1 at 4; Docket Entry No. 8 at 1–2). Simon asserts that his religion requires him to "eat halal meat, food, meals, and drinks everyday of my life" and that it is an "Islamic belief that morality is ruined and spirituality completely extinguished by the consumption of non-halal food." (Docket Entry No. 8 at 1, 3). He alleges that his religion requires that the meat he eats be slaughtered according to the "Quran and Sunna of the Prophet" and that the food not be contaminated with non-halal foods, such as pork, alcohol, and meat not slaughtered in the religiously compliant

---

[1] The court did not order service on Gauna or Abbar. The claims against these two defendants are discussed in Section IV.B. of this Opinion.

[2] The live pleadings in the case are the complaint and memorandum in support (Docket Entry Nos. 1, 2), and the plaintiff's more definite statement (Docket Entry No. 8). A *pro se* prisoner's response to a court's questionnaire or order for more definite statement is considered part of the complaint. *See Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976) ("Because the answers to the questionnaire will effectively amplify the original allegations in the prisoner's complaint, cf. Rule 15(a), F. R. Civ. P., they are an integral part of that complaint and not a separate, independent pleading."); *see also Requena-Villareal v. Almeida*, No. 1:17-cv-143, 2019 WL 1509141, at *3 (S.D. Tex. March 7, 2019) (noting that a prisoner's response to an order for more definite statement is "not a separate, independent pleading," but "a necessary pleading auxiliary . . . in order that the court may assess the factual and legal bases of the claim[s] asserted.") (quoting *Watson*, 525 F.2d at 892).

fashion. (*Id.* at 2). Simon has requested a religious diet accommodation from Chaplain Amobi, Warden Bowers, and Assistant Warden Wonders. He has submitted I-60s and grievances over the failure to meet his request. (*Id.* at 2–3). Simon also requested a religious accommodation in the form of a Ramadan halal commissary spend from Warden Bowers, Assistant Warden Wonders, and Chaplain Amobi. (*Id.* at 3). Simon's request for halal foods and a commissary were denied. (*Id.*). He was told that inmates who practice Judaism get kosher meals and commissary spend because the Wynne Unit is an "approved unit."[3] (*Id.*). Simon further alleges that during Passover, inmates who practice Judaism are "allowed to spend hundreds of dollars on kosher food products to eat while during the Holy Month of Ramadan, Muslims are not allowed to buy any halal food products to eat." (*Id.* at 4; *see also* Docket Entry No. 2 at 8–9). Simon alleges that the defendants did not offer any alternative method for him to practice his faith. (Docket Entry No. 8 at 3–4).

Simon asserts that Collier is the final decisionmaker on religious food and commissary spends. (*Id.* at 4–6). Simon asserts that he has spoken with Warden Bowers on "several occasions" to raise his "concern about halal food and commissary but was given the same statement every time. [Bowers] always said that there was nothing he could do without the Director's orders[.]" (*Id.* at 6). Simon asserts that he told Chaplain Amobi "about the Islamic issues and halal food concerns I had and was told that only Jews receive a religious diet and commissary spend before he denied my requests." (*Id.*). Simon asserts that he "attempted to express [his] concerns" to Assistant Warden Wonders, but that Wonders "rudely cut me off and informed me to get out of G-4 if I wanted to be allowed privileges, then he walked off completely ignoring me and my complaints." (*Id.*). Simon asserts that he spoke with Regional Director Gauna on Thanksgiving

---

[3] In his complaint, Simon originally stated that he "was provided no formal or informal justification why Islamic Halal food, meat, meals, and commissary were denied but Jews are allowed kosher food, meat, meals, and commissary." (Docket Entry No. 2 at 8).

3

Day 2022 "about questions I had concerning a halal meat, food, and Ramadan commissary spend. He let me talk but answered no response." (*Id.*). As to Chaplain Abbar, Simon states that Abbar "indicated that he understood my dilemma and concluded that all participating Muslims need halal meat, food, meals and commissary spends to fulfill our religious purposes." (*Id.*). According to Simon, Chaplain Abbar stated that "allowing Jews kosher products but refusing Muslims halal meats is wrong" and asked about the status of Simon's grievance. (*Id.* at 6–7).

As relief, Simon seeks court orders requiring that he receive a religious diet and Ramadan commissary spend. (Docket Entry No. 2 at 11). He also seeks $10,000 in compensatory damages and $100,000 in punitive damages. (*Id.*). Simon's response to the motion to dismiss contains a request for nominal damages as well. (Docket Entry No. 16 at 4).

The defendants originally filed a motion to partially dismiss Simon's complaint under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry No. 14). In his response to the motion, Simon makes clear that he does not bring a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and is only asserting claims for the violation of his constitutional rights. (*See* Docket Entry No. 16 at 1–3). In their reply, the defendants explain that in construing the plaintiff's pleadings liberally, the defendants addressed a RLUIPA claim out of an abundance of caution. (*See* Docket Entry No. 17). Now that Simon has made clear that he does not seek relief under RLUIPA, the defendants state that their motion seeks the dismissal of all Simon's claims. (*Id.* at 1). Simon filed a reply in which he again reiterates that he does not bring a claim under RLUIPA. (Docket Entry No. 18 at 1–2).

## II.     The Standards of Review

### A.     The Motion to Dismiss Under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (quoting *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005)). A motion to dismiss for lack of subject-matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction. *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013). The court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *In re Mirant Corp.*, 675 F.3d 530, 533 (5th Cir. 2012).

### B.     The Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) may be granted if the pleading "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, courts generally must accept the factual allegations contained in the complaint as true. *See Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (citing *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986)). Federal rules require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013). Under this standard, the court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true[,]" and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states

5

any valid claim for relief." *Harrington.*, 563 F.3d at 147 (internal citations and quotation marks omitted).

      **C.**      **Pleadings by Self-Represented Litigants**

In reviewing the pleadings, the court is mindful that Simon represents himself. Courts construe self-represented litigants' pleadings under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Even under this lenient standard, a self-represented plaintiff must allege more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft*, 556 U.S. at 678 (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* No matter how well-pleaded the factual allegations may be, they must reveal that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

**III.**      **Discussion**

      **A.**      **The Defendants' Rule 12(b)(1) Motion**

The defendants assert that any claim for money damages brought against them in their official capacities is barred by the Eleventh Amendment. Sovereign immunity bars actions against a state or a state official unless Congress has abrogated the immunity or the state has specifically waived its immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("[T]he Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity.") (citations omitted). Congress did

6

not abrogate the states' sovereign immunity when it enacted § 1983. *Will*, 491 U.S. at 66. And the State of Texas has not waived its sovereign immunity for purposes of § 1983 actions. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007) ("It is up to the Legislature to institute such a waiver, and to date it has not seen fit to do so."); *see also Putnam v. Iverson*, No. 14-13-00369-CV, 2014 WL 3955110, at *3 (Tex. App.—Houston [14th Dist.] Aug. 14, 2014, pet. denied) (explaining that the Texas Legislature has not waived sovereign immunity for any claim brought under § 1983). In the absence of such a waiver, Simon's claims for money damages against the defendants in their official capacities are barred by the state's sovereign immunity.

The fact that the defendants are state employees, rather than the state itself, does not change this analysis. When a state employee is sued in his or her official capacity, the state is the real party in interest for the suit. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (explaining that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and are "treated as a suit against the entity") (internal citation and quotation marks omitted); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984). Simon's claims for money damages against the defendants in their official capacities are construed as claims against the State of Texas and are barred by sovereign immunity. These claims are dismissed, with prejudice because amendment would be futile.

**B.    The Defendants' Rule 12(b)(6) Motion**

The defendants argue that Simon has failed to state a First Amendment claim because he does not have a constitutional right to the diet of his choice. "While prison officials need not give every religious denomination identical treatment, they must nonetheless afford 'reasonable oportunities [sic] . . . to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments.'" *Mungaray v. Collier*, No. 23-50595, 2024 WL 1826243, at *1 (5th

7

Cir. Apr. 26, 2024) (per curiam) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972)). "Under the First Amendment's Free Exercise Clause, any limits placed on a prisoner's religious exercise must 'reasonably relate[ ] to legitimate penological interests.'" *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see also Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995) (footnotes omitted) ("[I]nmates retain their First Amendment right to exercise religion; however, this right is subject to reasonable restrictions and limitations necessitated by penological goals."). The Fifth Circuit has held "that prisons need not respond to particularized religious dietary requests to comply with the First Amendment." *Watkins v. Upton*, 813 F. App'x 164, 165 (5th Cir. 2020) (per curiam) (citing *Baranowski v. Hart*, 486 F.3d 112, 122 (5th Cir. 2007)); *see also Lozano v. Davis*, 774 F. App'x 263 (5th Cir. 2019) (per curiam) ("[The Fifth Circuit has] 'already ruled that prisons need not respond to particularized religious dietary requests to comply with the First Amendment.'") (quoting *Baranowski*, 486 F.3d at 122); *Baranowski*, 486 F.3d at 122 (holding that the denial of religious diet did not violate the plaintiff inmate's free exercise rights).

Because Simon is unable to assert a First Amendment violation for the denial of a halal diet, his claim that he is being denied the right to eat halal foods and that he is being denied a Halal spend at the commissary during Ramadan must be dismissed.

## IV. The Remaining Claims

### A. The Fourteenth Amendment Claim

Simon argues that the policy or custom of allowing kosher food and a Passover commissary spend for kosher food, while not allowing halal food and a Ramadan commissary spend violates his rights under the Equal Protection Clause of the Fourteenth Amendment. The defendants did not move to dismiss this claim in their motion to dismiss.[4] The court considers whether the claim should be

---

[4] In their reply, the defendants included an argument as to why the Fourteenth Amendment claim should be dismissed. (*See* Docket Entry No. 17 at 4–5). However, because the defendants did not include

8

dismissed under 28 U.S.C. § 1915. *See* 28 U.S.C. § 1915(e)(2)(B) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted").

"The Equal Protection Clause of the Fourteenth Amendment is 'essentially a direction that all persons similarly situated should be treated alike.'" *Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "To establish an Equal Protection Clause violation, [a plaintiff] 'must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated.'" *Fluker v. King*, 679 F. App'x 325, 329 (5th Cir. 2017) (per curiam) (quoting *Baranowski*, 486 F.3d at 113). "'Discriminatory purpose' here 'implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group.'" *Id.* (quoting *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995)). "Notably, the Equal Protection Clause does not require 'that every religious sect or group within a prison . . . must have identical facilities or personnel'; it requires only that prison officials afford inmates 'reasonable opportunities . . . to exercise the[ir] religious freedom.'" *Id.* (quoting *Baranowski*, 486 F.3d at 123).

Simon alleges that Jewish inmates and Muslim inmates receive different treatment. He does not plead facts that show that this different treatment is the result of a discriminatory intent. His claim therefore must be dismissed. *See Lowery v. Gonzales*, No. 23-10366, 2023 WL 8449215, at *1 (5th Cir. Dec. 6, 2023) (per curiam) (affirming the district court's dismissal of the plaintiff's Fourteenth Amendment claim when the plaintiff did not "plead facts that show or suggest th[e] disparate treatment was the result of a discriminatory intent.").

---

the argument in their motion to dismiss, the court considers the issue on its own under the standard set forth in 28 U.S.C. § 1915(e)(2)(B).

Simon's claim that the defendants violated his rights under the Fourteenth Amendment is dismissed for failure to state a claim on which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii).  Again, this claim is dismissed with prejudice.

### B. The Claims Against Joel Gauna and Raqeeb Abdul Abbar

Simon has also sued Joel Gauna and Raqeeb Abdul Abbar.  The court did not order service on these defendants and instead examines whether the claims against them are appropriately dismissed for failure to state a claim on which relief may be granted under 28 U.S.C. § 1915.  *See* 28 U.S.C. § 1915(e)(2)(B) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted").

As to the allegations against Regional Director Gauna, Simon asserts that he spoke with Gauna on Thanksgiving Day 2022 "about questions I had concerning a halal meat, food, and Ramadan commissary spend.  He let me talk but answered no response." (Docket Entry No. 8 at 6).  As to Chaplain Abbar, Simon states that Abbar "indicated that he understood my dilemma and concluded that all participating Muslims need halal meat, food, meals and commissary spends to fulfill our religious purposes." (*Id.*).  According to Simon, Chaplain Abbar stated that "allowing Jews kosher products but refusing Muslims halal meats is wrong" and asked about the status of Simon's grievance.  (*Id.* at 6–7).

The allegations against Gauna and Abbar fail to state a claim for relief because Simon does not plead facts showing that Gauna or Abbar had any personal involvement in the actions that Simon alleges as the basis of this lawsuit.  Personal involvement is an essential element of an individual-capacity claim.  *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992).

To the extent that Simon asserts a claim against Gauna or Abbar in an official capacity, he has failed to plead facts showing that Gauna or Abbar implemented unconstitutional policies that causally resulted in Simon's constitutional injuries. To the extent that Gauna or Abbar are sued because they are supervisory officials, they cannot be held liable under § 1983 for the actions of subordinates "on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). And, as discussed above, Simon does not have a Free Exercise right to a religious diet of his choice and he has not pleaded a viable Fourteenth Amendment claim.

## V.     Conclusion

Based on the above, the court orders:

1.     The motion to dismiss filed by defendants Bryan Collier, Rodger Bowers, Dustin Wonders, and Philip Amobi, Docket Entry No. 14, is granted. The claims against these defendants are dismissed with prejudice. The Fourteenth Amendment claim against these defendants is dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

2.     The claims against defendants Joel Gauna and Raqeeb Abdul Abbar are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

3.     Any pending motions are denied as moot.

4.     Final judgment is separately entered.

SIGNED on July 2, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge